21-916 Sullivan v. Snider, Ms. McCarthy. Thank you. Good morning. May it please the court, my name is Noreen McCarthy and I represent Robin Snider and David Snider in this appeal. This appeal was before a motions panel on a motion to dismiss for lack of jurisdiction, correct? No, I don't think so. Well, I'm looking at an order that we filed and the order that we filed said that there was, that the portion of the district court's order granting preliminary injunctive relief was immediately appealable and that referred to the part that said that the appellants can't maintain or keep the cabin pending final decision and required them to remove the cabin after final decision. Correct. So what part of your appeal addresses what may be a preliminary injunction against your clients maintaining the cabin? Well, that's a good question. We have focused, of course, on the court's decision because the preliminary injunction of course cannot... When you say you focused on the court's decision, you're referring to the district court's decision. The district court's decision. Not so much on our decision. Well, because the preliminary injunction can't stand if there is, if the court was improper in granting the summary judgment motion. So we were appealing... Aren't there a lot of issues to be tried in the district court? Well, there are. That's our point, that there are a lot of issues to be tried, but the court has removed from our ability to try the most critical issue in this case, which impacts every other decision that the court rendered. So there's no final judgment. I believe it is a final... 52B, are these issues properly before us, before entry of a final judgment? Did the court enter an order saying that a partial final judgment should be entered and certifying why that should be? I believe so, and I'm sorry, Your Honor, we had taken care of this. Now you're refreshing my to enter that order so that we could proceed on these issues. Where is that order? I've not seen that order. I do not have... Is it in the record? You know, I believe it may not be because I believe that it came after the fact. It came after our record, after the record was sent up to this court. On the motion to dismiss for lack of jurisdiction? I think it was entered after the motion was sent up to this court, and so I believe... It's a pretty important part of the record, isn't it? It is, it is, Your Honor, but I do believe that it is part of the record of the district court, but that it hasn't been sent to this court. So you're saying there's a partial final judgment on the issue of adverse possession? Yes, I think that the... On the motion on the property? Correct, because... You don't dispute that all these other claims for slander, titling, trespassing, nuisance, and so on, that has yet to be decided. Is there going to be a trial on those claims? Well, our point is that we can't really try those cases when the judge has withdrawn from the jury the issue of whether Robin Snyder had a reasonable belief on the adverse possession, because they are so intertwined. And so what will end up happening is that we will end up with trying to litigate whether there was slander, nuisance, negligence, all of which is based on whether or not she held a reasonable belief that the property was hers. And so, for example, the slander. Okay, so your point that the district court has decided, has made up its mind about the adverse possession question, and therefore that will undermine your belief to try the other claims, or that seems right, but that doesn't answer the question about a final judgment. But you're saying there has been the entry of a partial final judgment. I guess we'll look into that. Correct. If we get something more from you, we could ask for it. Correct, and I am not on record for the case below. Opposing counsel may be able to speak to that, but I do recall going back and that we prepared something and filed that, and I believe that the court did issue that decision. But you didn't think to let this panel know? I have to admit, I didn't think to update the docket that had come over already. So I do apologize for that. But I do believe that we did take care of that when the court issued that decision. If these issues are so intertwined with what's left to be tried, how could the district court properly order the enter of a partial final judgment, saying that these issues are not sufficiently intertwined? And I think that's why the court allowed this to proceed to appeal at this point. Well, we haven't allowed it to appeal to proceed past the point where we noted that there was a preliminary injunction. That there may have been a preliminary injunction, right? Okay, so we understand that. So I guess if we need something more from you on that issue, we'll ask for it. But why don't we talk about the adverse possession question? Thank you, Your Honor. If this court were to affirm the district court's decision dismissing the adverse possession claim and granting partial summary judgment for Mr. Sullivan, it will, in effect, be creating a new rule. And that new rule is that whenever there is a survey, a person cannot prevail on an adverse possession claim. That new rule will be in conflict with a decision by this court that questions of reasonableness, that's in the Hyman decision that I cited, that questions of reasonableness actually go to the jury. It will be in conflict with Supreme Court cases where questions of reasonableness are to go to the jury. That is cited in my brief of Railroad v. Stout and Tolan v. Caput. Reasonableness can go to the jury, but there still might be cases where there just is no disputed question of fact about reasonableness, right? So if the, let's say the adverse possessor literally had the survey in front of him, and so there was no question that he knew where the property in line was, and yet backed by the property anyway, I think we'd say there's no question of fact as to whether he had a reasonable basis for the belief that it was his property, right? Well, in this case, though, the only fact is that there existed a 1999 survey, not that Robin ever reviewed it. You're just saying that this case doesn't fall into that category, but it's not like we have to adopt a categorical rule that it would never go to the jury. Like, there might be cases where it's clear that the person, you know, had seen the survey and there was no question that he was aware of the property line. And there might be cases where there was some argument for why it would have been reasonable not to pay attention to the survey, or why you would have concluded the survey was misleading. And you're just saying that this is in the latter category rather than the first, but that's the question to be decided, isn't it? Well, except that the court's decision on page 28 of its decision specifically says that it is ruling against Robin Snyder because of the existence of a 1999 survey. It's listed by the trust of which the Snyders were principals. Correct, correct. But even so, what that means is that whenever there is a survey, a person claiming adverse possession can't even get to the jury. That is what this rule, that is what that decision- Why does it get this sort of intuition that if somebody has conducted a survey in the recent past and then goes on and builds something on the neighbor's lot, that it seems unlikely the person has a reasonable basis for the belief that it was his property. So why, in this case, could you still have a reasonable basis for that belief, despite the fact that you had recently conducted a survey? When you say that it seems unlikely, that's not a fact that is clear in this case, by any stretch of the imagination. There's an overwhelming amount of evidence that Robin Snyder did not know where that boundary was. First of all, the survey pin is a simple six inch pipe sticking out of the ground in the woods. And we're talking the north country on this island in a wooded lot that has been overgrown with brush and everything else. There's no question that there's this spike there, but who could see that in the woods? But is it enough to say you have a reasonable basis for believing it was your property just because you said, well, there was no demarcation right in front of me. And so I just didn't know where my property was. When you had to show, in only cases where somebody has such a reasonable belief, there's some reason why they thought that that property was theirs. It was a fence that was demarcating the property in a way that didn't match up to actual ownership, or somebody had told them this is your property, and so on. You're saying that they have a reasonable belief because they just had no idea and weren't really paying attention to where the property boundary was. Well, I don't know that it would go that far. They have a leach field. This is right on their leach field. It's right next to the leach field. It's visible right from the house. Robin can stand on the porch and watch her children as they play in the playhouse. And in fact, the New York statute, the real property statute 522, expressly allows for this type of adverse possession claim. When it is not part of a survey, when it's not part of a deed, and when they have just openly used it, it doesn't have to be enclosed, it doesn't have to be anything more than that. But they built the cabin or the tree house after Mr. Sullivan owned the property. It wasn't a pre-existing use. Well, that's true, but Mr. Sullivan had never stepped foot on the property, and I'm not even sure that my client knew that he had bought the property. There's no indication that my client knew that somebody had bought that property. We're talking really North Country here, where there's a lot of woods everywhere. Yeah, but it's still New York. It is still New York. Sometimes we don't think so, but it is still New York. But on three sides of his property, we have woodland. And so you're in the woods up here. And when you're talking about a stake that is maybe, what, 200 to 300 feet off in the woods, and the lines are never perfectly straight on anybody's property up there, including the Sullivan's property, you can't say for sure that anybody knew exactly where that property line was. Otherwise, why commission a new survey in 2018, if it was so clear? I was impressed by the testimony by the zoning office, the officer who said if they had come to us for permission, we would have told them they couldn't build it there. That was a letter that the zoning commissioner wrote? Correct. Right, but you see, this is what the issue is. That's a question for the jury to decide. Because according to David Snyder, the uncle or nephew who helped the children build that playhouse back in 2002 talked to the zoning commissioner. And they said that you didn't need a permit for this. And the other thing with that is that the information that the zoning commissioner or officer was going on was given to him by Attorney Briggs, who was representing. So if you're a jury, on what basis could the jury conclude that your clients had a reasonable basis for the belief that it was their property? So first, they have met every other element of the adverse possession. Right, that they openly used the property, that they represented to all of their family and friends that it was their property. That it's very difficult to see up there where the exact property line is. That three of Mr. Sullivan's agents were on that property over and over and over again and never raised the issue and Sullivan never objected to this playhouse. To me, that's probably the most compelling evidence that should be presented to a jury. And that is the only question here. Can we bring this to a jury? Or is the existence of a 1999 survey, take this issue away from the jury entirely? That's our concern here. But when you have- You're saying that it's enough for a reasonable basis for the belief that it's your property, that the other property owner saw the thing and just didn't object. That's actually what- Subsequent to your occupation. That is actually what section 522 says. Is that when you, if you had, it says, you know, if you are possessing it in an open manner, such that a reasonably diligent owner would notice your treehouse, then you get to bring an adverse possession claim. That's what that whole provision is about. Is that whole section that was respectfully omitted from the brief that was submitted by respondent. Paragraph 1 is precisely, if it's not on your deed, you are openly using it and the owner knows it. And the owner can see that and the owner was reasonably diligent and never objected. And in this case, we have three agents of Mr. Sullivan who are there. One of them, Mr. Bruden, I think his name is. He said he was there 10 to 20 times per year and never mentioned anything about any kind of encroachment. So it was not until they actually had an official surveyor out there in 2018 who discovered that this- And it was only a slight encroachment, by the way. It was only, based on the record, a slight encroachment. It wasn't like they built it in the middle of his lot or somewhere off in the woods. And the walkway started or the cabin started on the Snyder's property. This was a mistake at most. And that's why we are here. This was a mistake. It was something the jury should be able to hear. Yeah, but I guess since you've just said that you characterize it as a mistake, is a mistake equivalent to a reasonable basis for the belief that it's his property? Yes, certainly. We always often make mistakes because we reasonably believe something to be other than what it is. Okay. Yeah. Thank you very much. All right. I'm sorry, go ahead. While you're considering whether the court entered a partial final judgment or not, take a look at page A12 of your appendix. Docket entry 86 denied a request by the plaintiffs for a bill of cost saying that it was premature because the court did not direct the clerk of court to enter a final judgment on part of the claims in this case. Pursuant to rule 54B. Okay, I will check into that. If there's something after that where the court did, I think we have to know about it because otherwise a lot of this case, a lot of your arguments are beyond our jurisdiction. Thank you, Your Honor. Okay, thank you very much, Ms. McCarthy. Let's turn to the appellee, Mr. Norfolk. Good morning, my name's Matt Norfolk. I'm the attorney for the appellee, Robert Sullivan. May it please the court, I will tell you, Judge, that the lower court did grant a stay of that proceeding while this action was pending. So that I do know. Granted a stay of the risk that's to be tried. Right, of the remainder of the case. But was there a 54B judgment that said this part is final and should proceed? No, not that I know of. Did anyone view it as the final judgment called for in Judge Sutterby's decision? Did the judge itself view it as a final? He said that they can maintain it until, or they have to remove it at the issuance of the final judgment. Right. Did anyone view that order as the final judgment on that issue? Well, yeah, I would say that it was, that judge, yes, he decided those causes of action, or drew it out for partial assembly judgment, but I don't see anywhere, nor do I recall where he said, well, that's the final judgment for the entire case. But of course, that cause of act for adverse possession ended. It was thrown out. So I hope that answers your question. Let me read you what he said. He said, on page 51 of his decision, that defendants are permanently enjoined for maintaining and continuing to keep the cabin on plates and slot. And are ordered to remove the cabin from plaintiff's lot within 30 days from the entry of the final judgment in this action. Did anyone view this subsequent order that's not in our record as the final judgment in this action? I didn't. You did? I did not. But you just said that there was no such order. No room 54B order saying a partial final judgment shall be entered on this adverse possession bill. That is correct. Maybe I don't want to confuse myself or the court. The judge below said just what you said, ma'am, that upon a final judgment. I'm submitting to you, there was no final judgment. Did this adverse possession cause of action, was it dismissed? Yes. But the action of a permanent- It was dismissed in an interlocutory order. Yes, yes, your honor. Interlocutory, by definition, not final. Correct, and that's what happened, but there was a stay. But there is an injunction that says that the defendants are enjoined from maintaining and continuing to keep the cabin on plaintiff's lot, right? So the senators now are enjoined from maintaining it. Now it says they're not ordered to remove it until 30 days from the entry of final judgment. So I guess they don't have to remove it at this time. That's right. But right now, they're enjoined from maintaining it. So what does that mean if a window breaks, they're allowed to go and replace it? Well, I guess that's opening the interpretation of the judgment. I would think in a reasonableness standard, if you will, that they should be allowed to fix the repair of the window on that example. So what are they prevented from doing? What's, excuse me? So what are they prevented from doing? Well, do you know what the ruling actually do? It says it just judgment actually just said it forbids them to do any maintenance on it. But you just said that it would be reasonable to replace a broken window. So what is it that they're actually prevented from doing? They're not permitted to do anything. I was looking at it as an adversary where I say if they were to advise me that there was a window broken, I would have no problem with that. I would consent to her going to the judge and asking to fix a window. Is it, why would they do that? I don't know because there's an order to tear it down. But that was my example. I think in the real world practical sense, if they wanted to preserve something, I wouldn't have a gripe with it depending on what it is and I'd consent to the judge. But that order, you're right, forbids any use, any maintenance. It is there to stay there really untouched until there's a final judgment in the entire case. Okay. So as I said, we might have questions more in person about that. But assuming that we can reach the question of adverse possession, what do you have to say to your opponent's argument that we essentially have a new rule that says whenever there's a survey, you can't have adverse possession? That's wrong. In each, these adverse possession cases are highly fact specific, right? But what we have here, and they're undisputed, they're undisputed facts. We have the appellant, the appellant had purchased the property in 2000 and he has put it inside the survey. Their deed description does not include any portion of the appellee's lot. It is, it says what it says and it follows what the survey lot says. If you were to, in one of the cases that I cited too, there was a survey out there in the Suffolk County Court, which was affirmed by the second department, said that was enough to show that they didn't have a reasonable basis. Not only here did they, it was commissioned in the survey, they had the setback restrictions on it. They had, of course, the pins that were set in. And then they, from what they allege, they constructed this cabin over a period of years. So this isn't. The appellants cite in their brief a Slater versus Kearney from the third department, unappealed I will assume. And you, did you, you didn't cite it in your brief. Can you distinguish that case from the facts of yours? In that case, the judge held that possession of a survey is simply not enough to defeat adverse possession. Right, and in here, again, your honor, we have what we have here is the purchase, again, the deed doesn't include the legal description. You have them, what they've essentially said here, if I may, I don't want to evade your question. But what they've done here is the appellant has not offered anything to suggest otherwise other than, well, we believed it was there. We thought it was there. The appellant cited this case to which you did not respond in your reply or in your brief. It's from 2017, so you're aware of it, that says that simple possession of a survey is not enough to defeat adverse possession. Here's the difference here. It isn't simple possession. The appellants commissioned their own surveyor, okay? They asked the surveyor to give them, after his survey, a certified copy of the map. It isn't mere possession. They commissioned a surveyor to then go out and give me the setback restrictions, show me the boundary lines, put pins there, and then after, give me the survey map. Okay, so we can have it in our possession. So there's more than just, it came about. So you're saying it's not just the possession of a survey, but there was testimony that he had looked at the survey recently, and they had themselves commissioned it in the recent past. Yes. But then I guess I also have this question, which is, is it just about the survey? So would it be enough to have a claim of right, just that you made a mistake about the property line, or do you need something more than that? My mistake is not come into this discussion as far as a standard. It is just a reasonable basis, and then you said earlier- So let's say there wasn't even a survey. Let's say they knew there was a property line out there somewhere, and they just went and built a cabin, and they made a mistake as to where their property line had ended. Could they be occupying that property under a claim of right? No. What they're occupying- What is required to have a reasonable basis for the belief that it's your property? What is required to have a reasonable basis? Well, again, that's going to be case specific. I can give you a litany of- I guess I'm going to this question. So your position is it has to be more than a mere mistake. There has to be some- Sure. Some reason why you thought it was yours, as opposed to just not knowing. Right. And to respond to our argument that there is no reasonable basis, the appellants are- This is their argument. Well, we wouldn't have put it there if we didn't believe it was our land. Because of the fact that it's there, we believed it. So what the appellants are doing is an actual belief standard, as opposed to a reasonable basis standard. And to get back, Judge, to your question, aside from the commissioning of the survey and having it there, there were pins there. And they were constructing in the vicinity of where these pins were set. Yeah, but the record doesn't show that they were necessarily visible. I mean, it was a wooded area and there were no pins, right? And it's not that- Yeah. We wouldn't put them on notice, necessarily. Well, I'm speaking from personal knowledge, which I've been attacked for doing that. But when you have- Well, let me ask, I guess I'd ask a rhetorical question. Well, why did they put it over there? The testimony was we wanted it close enough, but out of the way. So you can draw from, infer from this record that they knew they were putting it on the side of their lot. So here they are constructing, and they never thought to see where the property line is. And they were involved in the setting of the pins? Yes. The signers had set the pins. I'll say, well, I was going to say they commissioned it. They commissioned it. But is there evidence in the record that they had seen them or knew where they were or were involved in the setting? There is nothing in the record that they've seen them. And that would be in the, the knowledge would be in the possession. So you're saying that they knew that they were there, and so maybe they had an obligation to look for them when they're deciding on the boundaries, but, well, they knew there was, that's why they went out to build the cabin, they would have seen it, and it would have alerted them to the property line. It's reasonable to infer that they did know where they're there. They had them on the survey map. They commissioned a surveyor to put survey pins there. Do they know specifically where these pins are? I can't answer that. But they were out there. They were marked on the survey map. Okay. Thank you. If there are no more questions, thank you very much, Mr. Dunlap. I'll turn it back to Ms. McCarthy on rebuttal. All right. Thank you. Thank you. I will get that information for you. But now that you've stirred up my memory, I do recall going back to the trial attorney and saying, we need to file that 54-B, and I believe that we did file it and that the court did order it. So I will get you those records. So why don't we say that both parties could submit a letter on this question in a week? Yes. Is that reasonable? Telling us about whether there's been an entry of the court's final judgment. Is it on the docket? I believe it is on the district court docket. Yes. If it's on the district court docket, can't you send it to us right away? Yes, I will. Okay, so fine. Why don't you do it within a day? Yes. Your Honor. If I may, we've been hearing a lot about we should draw an inference from the record that the Sniders knew, and that it's reasonable to infer that they knew that the pins were there because they commissioned the survey back in 1999. That's the whole point why you don't do it on summary judgment, because we are inferencing facts. We are drawing inferences in favor of the moving party. That is exactly what he is doing just now during his argument. He's asking you to draw inferences in favor of his client, the moving party, for partial summary judgment, which the Supreme Court says you cannot do. That's our problem with this, is that the case law is very strong. You cannot draw inferences. All right, so let's think about it the other way. So there needs to be a basis for the jury to conclude that your clients had a reasonable basis for believing it was their property. And you're saying, well, it's true they had a survey they had commissioned just a couple years before, I take it, and maybe they forgot what it said or never looked at it, and then they just made a mistake. But in all of the cases about a reasonable basis for belief about a claim of right, there's been some reason why you had a reasonable basis for doing it. Someone had informed them of the property line but had described it an error. There was a fence demarcating a boundary and they relied on that fence. But here, there's nothing that told them that this is their property. You're just saying they went out to build a cabin and made a mistake as to where their property ended and their neighbors began. Is that enough to establish a reasonable basis for the belief that it's their property? I believe that's for the jury to decide. But I think the answer is yes, especially in the North Country where you're talking about acres and acres and acres of woodland where sometimes the boundaries are not very clear. And in this case, the boundary was not very straight. The New York State legislature put in this language about a reasonable basis for the belief, and it didn't previously require that. It has to mean something. So it has to be that somebody is sort of like a bona fide purchaser. They're acting in good faith when they go out and build on somebody else's land. But you're saying, well, it's enough if they just made a mistake and occupied it. But isn't that exactly what would happen under the old statute before the amendment? No, and you make an excellent point there, Judge. The old statute said even if you intentionally took somebody's property, you could claim adverse possession. And then the legislation said, wait a minute. You can't do it intentionally. In other words, you can do it by mistake. That's exactly what the change in the law was, is that if for some reason you have made a mistake, but for 10 years, and respectfully, there is nothing else in between there. Either you intentionally do it or you do it by mistake. And if for 10 years you have- Well, there's a third possibility, which is reasonable basis for the belief might be that you had a good faith reason for believing it was your property. It wasn't simply a mistake or carelessness about the property line. It was actually there's a reason why you believed it was yours. Right. Let's say you had a reasonable- So you think you agree that your clients did not have a reason for believing that the property was theirs. No, not at all. I don't believe that at all. I believe that they had a reasonable basis, given all of the circumstances, to believe that that property was theirs. It was very close to their house. It was right on the border. Part of the cabin sat actually on their property. The border line itself is not a straight line. Sullivan's line is not straight. That pin is 200 to 300 feet off in the woods. It was his uncle who's building it. They hadn't seen that survey in three years. The kids are doing this over the Fourth of July holiday when everybody is out there having a good time. I think there's an absolute reasonable basis that they made a mistake on this, of a minor mistake. It only encroached slightly into the next property. And now what we have, based on that minor mistake, is we have slander. We have tortious interference with contract. We have astronomical claims for damages. Well, actually, I mean, it's pretty clear that those claims are not before us because there's a pending trial on those claims, right? Well, but that's the basis of those claims. Yeah, I get that. Yeah, so it's had the snowball effect, and it was a mistake. And whether that mistake is grounded in a reasonable belief is for the jury to decide. That's the problem here, is that the only thing that the jury— But actually, just to pursue that a little bit, you know, it could be that a court could conclude that a mistake is not enough for a reasonable belief, but maybe a mistake is also not enough to say that you slandered somebody's title because you made a mistake, and so you didn't intend to interfere with it. It might be that the standards are different for these different claims, right? I don't know. The court didn't rule on that. The court just said because there is a 1999 survey, they don't get to bring the case to the jury, and that we think is wrong. We just think that's wrong. We could actually end up with inconsistent decisions in here. The jury might find that they actually did have a reasonable belief. And now we have a district court who says they didn't. And so what happens in that case? It's like having inconsistent verdicts on the case. Okay. Thank you very much. Thank you. Justice McCarthy, the case is submitted. Thank you. We'll turn to argument next in No. 21-2049, United States v. Mendelowitz. Ms. Shapiro, whenever you're ready. Thank you. May it please the court. Let's hold on a second. Oh, I'm sorry. To let the council leave the table. Sorry. Thanks. Okay. May it please the court. My name is Alexandra Shapiro, and I represent Appellant Michael Mendelowitz in this appeal. Mr. Mendelowitz was convicted of fraud because CPS, his credit card processing company, overcharged certain of its merchant customers. But CPS's sales and billing practices varied widely, and many were consistent with industry practices and implicitly or explicitly approved by its parent company and majority owner Evo Payments. The key issue at trial was thus whether Mr. Mendelowitz acted in good faith, whether he knew about and sanctioned deceptive sales tactics by some of his salespeople, or instead whether he believed CPS's practices were consistent with industry practice and Evo's own practices. But his efforts to present that good faith defense were derailed by three clear legal errors committed by the district court. First, the court refused to allow the questioning needed to ferret out potential anti-Semitic bias by prospective jurors. That questioning was required by the Constitution on the particular facts of this case, which involved a defendant who was an observant Orthodox Jew and had been charged with engaging in fraud with Jewish colleagues while bestowing favors on Jewish friends, charges that play into pernicious stereotypes about Jewish people. Second, the district court erroneously excluded Mendelowitz's sole witness, an expert, Patrick Moran, who would have testified about industry practices that bolstered his good faith defense. Third, the court excluded an exculpatory recording on the erroneous premise that a witness who had participated in the recorded conversation could not authenticate the recording and then defended the ruling post-trial based on a misunderstanding of the hearsay rules. Counsel, you appreciate that we defer to the district court on voir dire heavily. We defer to them. So you have to explain to me how the district court's voir dire questioning failed to get a fair jury and that it not only that but became structural error on this trial. Yes, Judge Buller. It is true that this court defers to the district court's exercise of discretion in conducting voir dire. However, the Supreme Court has clearly held that where there are substantial indications of a likelihood of racial or ethnic prejudice in a case based on the particular nature of the facts and the charges, that denial of a specific request to inquire into that constitutes an unconstitutional abuse of discretion. And our position here is that on the unique facts of this particular case, this is what happened. Counsel requested two specific questions to get directly at the issue of whether any juror harbored anti-Semitic biases about Jews in finance that could have led to a juror not being impartial, and the judge refused to make that inquiry. But the judge didn't simply refuse to make the inquiry, right? The judge initially was going to make the inquiry, and then the government objected that, oh, this suggests that he's being prosecuted because of religious bias and so we don't like the way the questions are. Then the judge arrived at the question, does something about his physical appearance, is there something about his physical appearance that would prevent you from being fair, right? So the judge did ask that question. He asked a question about physical appearance, but that didn't get at the issue. That was sort of a way of kind of a very ambiguous way of getting at it, and there can be no assurance that jurors on the view that We know that at least one prospective juror did understand it that way because he pointed out that he was wearing a